ZIMMERMAN, Respondent, vs. NORTHERN PACIFIC RAILWAY COMPANY, Appellant.

*May 21—June 17, 1914.*

*Assault and battery by watchman upon trespasser: Justification: Special verdict: Evidence: Damages.*

1. In an action for assault and battery by a watchman upon a trespasser upon defendant's property, it being claimed by defendant that the watchman acted at first in protection of defend-

ant's property and later in self-defense, and that he did not use unnecessary force in either instance, it was error, after rejecting questions proposed by defendant relating to both branches of the justification, to submit in the special verdict only the question whether the watchman "aggressively and otherwise than in self-defense" used "force upon plaintiff."

2. Testimony offered by defendant in such case tending to show that the watchman did not use excessive force, that his hand was wounded by a knife carried by plaintiff, that plaintiff had several times taken wood and coal from defendant's yards, and that he had been at one time arrested by another watchman for stealing wood, was erroneously excluded.

3. If at the time of the first assault upon him plaintiff was engaged in stealing the property of the defendant, the damages recoverable by him under the evidence in this case should not exceed $500.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

The plaintiff complained of an assault and battery upon him by a servant of defendant on October 19, 1912. By special verdict it was found by the court that the plaintiff was at the time in question a trespasser on defendant's premises and in the act of unlawfully taking away pieces of board, and by the jury that defendant's servant, acting within the scope of his duty, did aggressively and otherwise than in self-defense use force upon the plaintiff. Compensatory damages of $1,700 were awarded, from which, by due proceedings, $500 was remitted and judgment given for the plaintiff for $1,200, interest, and costs.

There was evidence tending to show that the plaintiff was severely beaten with a club or stick, he had two ribs broken, a cut in his head an inch and a half long, a dislocated finger, a scratch in front of his ear, a small cut on his left shoulder, and his left thigh was black and blue. August Malchow, who committed the assault upon the plaintiff, was a watchman in the employment of defendant, and his testimony is to the effect that the plaintiff was stealing pieces of boards from the yard and with a knife resisted Malchow's attempt to stop

him, whereupon the latter employed only such force as was necessary to prevent plaintiff taking the boards and to defend himself. Errors are assigned: (1) in the rejection of evidence; (2) in the questions submitted to the jury; (3) in instructions; (4) in refusal to submit to the jury questions asked for by the defendant; (5) in rejecting proposed instructions; (6) in awarding excessive damages.

For the appellant there was a brief by *Hanitch & Hartley,* and oral argument by *C. J. Hartley.*

For the respondent the cause was submitted on the brief of *George C. Cooper.*

TIMLIN, J. We have come to the conclusion that this judgment must be reversed because submitted to the jury in an improper manner prejudicial to defendant and because of erroneous exclusion of evidence, and therefore shall notice and criticise rulings upon evidence which standing alone would not suffice for reversal, so that if possible like errors may be avoided by trial courts.

The defendant requested as part of the special verdict the following questions: (1) "Did the watchman, Malchow, use unnecessary force in protecting the property of the defendant? (2) Did the watchman, Malchow, use unnecessary force in order to protect himself from the plaintiff?" With reference to the first proposed question the court was requested to instruct the jury, among other things, as follows:

"The watchman was justified in using sufficient force to protect defendant's property and to evict the plaintiff from defendant's yards. . . . You must answer this question 'No' unless you are satisfied by a preponderance of the evidence and to a reasonable certainty that the watchman did use unnecessary force in protecting the defendant's property or to evict the plaintiff therefrom."

With reference to the second proposed question the court was requested to instruct the jury as follows:

"In answering this question you will take into considera-

tion the hour of the day, the circumstances under which the watchman found the plaintiff, any previous experience which the watchman may have had with plaintiff, any knowledge or lack of knowledge the watchman had of plaintiff. The watchman was entitled to use such force as an ordinarily careful and prudent man would have used under the same or similar circumstances and conditions."

We do not quote these requested instructions with approval, but merely to show that with the questions requested for the special verdict they brought sharply to the notice of the learned trial judge that there were two branches of the defendant's justification, the first relating to the aggressive advance upon plaintiff in the protection of defendant's property and the second relating to the watchman's own right of self-defense against attack by the plaintiff upon the watchman after the latter had undertaken to prevent the carrying away of defendant's property. These two questions were prominently in the case. The learned trial judge, to cover the assault and battery, submitted only one question, as follows: "3. Did Malchow aggressively and otherwise than in self-defense use force upon plaintiff?" This question did not properly present to the jury the issue to be tried. It might well have been that Malchow "aggressively and otherwise than in self-defense" used some force upon the plaintiff in the first place to prevent the latter carrying away the property of defendant. But this would not create a liability unless the force so used was unnecessary or excessive. Under this question and the instructions given relative to it the jury could well have understood that the only justification was self-defense, when there was in fact and as to the first aggressive act on the part of Malchow the justification of protecting property in his charge against trespass or larceny, and also the further attempted justification of the succeeding violence by the claim of self-defense. It was not disputed that Malchow was the aggressor in his attempt to protect the property and that he began the affray by the use of something

like an assault for this purpose and was not at this stage of the affray acting in self-defense, but he claimed this was followed up with force exerted in self-defense. The court, therefore, rejecting questions proposed by defendant, submitted an incorrect and misleading question to the jury. This is serious error and was no doubt prejudicial. Under the uncontroverted evidence the jury could hardly have answered this question otherwise than in the affirmative.

Describing the affray for the purpose of attempting to show that he did not use excessive force, Malchow, on the part of the defendant, testified: "I had a revolver with me. I used a flashlight. I did not use my revolver. I did not use anything but my stick and my feet. I saw I wasn't in danger." On motion of plaintiff's counsel this last sentence was stricken out. "I struck at him simply because I kept his hand away from me, kept the knife away from my feet." · On motion of plaintiff's counsel this statement was stricken out. "I got away from him just as quick as I could." On motion of plaintiff's counsel this was stricken out. Another witness for the defendant testified that Malchow came to his office after the affray and told him of the difficulty with plaintiff and showed his wounded hand. The court sustained an objection to a question asking whether the hand was cut or merely skinned. Malchow had testified that prior to the affray in question plaintiff had been taking things out of the yard, and another witness was asked whether he had ever seen *Mr. Zimmerman* in the yards prior to that time, and an objection to that question was sustained. He was then asked how often he had seen *Mr. Zimmerman* in the yards during the month of October prior to the 19th. An objection to that question was sustained. Defendant then offered to prove by the witness that he had seen the plaintiff in the yards several times during the month of October prior to October 19th and had seen him take wheat and coal from the yards. An objection to that offer was sus-

tained.    After the various attempts to prove by another wit-
ness that the plaintiff had been in the yards and what he was
doing, all of which was ruled out by the court, the defendant
offered to show by this witness that in the month of October
prior to the 19th plaintiff came into the yard and went to the
pile of coal belonging to defendant and started to take the
same and the witness ordered him out of the yard.    An ob-
jection to this offer of evidence was sustained.    Still another
witness was called by the defendant, who had been a watch-
man, and he was asked: "At the time you were watchman
there did you arrest *Mr. Zimmerman* for stealing wood?"
He answered "Yes, sir," and the court on motion struck out
the answer.

In our opinion these rulings were entirely too technical and
there are no rules of evidence under which they can be justi-
fied.    They are of the same nature as the rulings condemned
in *Schultz v. Frankfort M., A. & P. G. Ins. Co.* 151 Wis.
537, 139 N. W. 386.    We are further of the opinion that,
if it is conceded or established by proof that the plaintiff at
the time of the first assault upon him was engaged in stealing
the property of the railroad company, the damages even as
fixed by the court are excessive, and unless a larger measure
of pecuniary loss by plaintiff is proven upon another trial the
verdict, if plaintiff has a verdict, should not exceed $500.
*Nelson v. Snoyenbos,* 155 Wis. 590, 145 N. W. 179.

*By the Court.*—Judgment reversed, and the cause re-
manded for a new trial.