OSHOGAY, Respondent, vs. SCHULTZ and another, Appellants.

*June 6—June 30, 1950.*

FAIRCHILD, J., dissents.

*John E. O'Brien* of Fond du Lac, for the appellants.

For the respondent there was a brief by *Reed, Nesbitt & Kay* of Ripon, and oral argument by *John L. Nesbitt*.

GEHL, J. Defendants assign several errors, the first of which is the claim that the court erred in its instructions with respect to the degree of care required to be exercised by the defendant Allen. We need not discuss this contention because we are convinced that he was guilty of negligence as a matter of law and should have been so found. Certainly, one is guilty of negligence as a matter of law who fires a revolver with as little effort to control the course of the bullet as defendant Allen exercised in a relatively small room occupied by ten or fifteen people. Allen's act under the circumstances indicates a recklessness and a disregard for the safety and security of his patrons. It is not as though plaintiff's conduct had been such as to put him in fear of his life and to justify his use of a pistol. If there was error in the instruction it was not prejudicial.

Defendants contend that the court erred in refusing to incorporate in the special verdict a question as to the contributory negligence of plaintiff; there was nothing in the testimony which would support a finding of contributory negli-

gence. They contend also that a question should have been submitted as to whether the injury to plaintiff resulted from an accidental or unintentional act; having determined that defendant Allen should have been found guilty of negligence as a matter of law this issue was not in the case. As to the defense of defendant's self and his property and as to provocation by the plaintiff with respect to each of which the defendants argue a question should have been submitted to the jury, the answer is that these defenses are not available in a negligence action such as was pleaded here and upon which theory the case was tried. There was no factual situation which would warrant the submission of the question to the jury of whether the conduct of plaintiff constituted such provocation or negligent conduct on his part as to excuse or justify the discharge of the weapon by the defendant Allen.

There was no testimony which would support a finding of contributory negligence. Nor was there any pointing to an accidental or unintentional act on the part of defendant Allen. He did not, it is true, intend to shoot the plaintiff, but he did intend to fire the gun; the sole question was whether such act constituted negligence. In fact, there was no issue as to what Allen's intention was. The other defenses offered are not available in a negligence action.

To understand fully defendants' final assignment it is necessary to set out in some detail the colloquy between counsel and the court. Upon his direct examination defendant Allen was questioned as to his military service. An objection thereto was sustained. He was then questioned as to his discharge from the armed forces, whereupon the court remarked, "Well, let's not go into detail." He was asked whether he had received a citation in the military service. An objection was sustained and the court said, "Get down to what happened on the night of the 18th." Counsel then sought to obtain information from the witness as to his having contracted

malaria during his service. Objection was made and the court again said, "Let's find out what happened on the 18th."

The following then took place:

"*Q.* You say that you contracted malaria while you were were in the service? *A.* That's right.

"*Q.* Have you been bothered with it since, from time to time? *A.* Yes, I was getting an attack every two weeks while I was—

"*Q.* (interrupting.) In what part of the world was the 33d division operating?

"The Court: Now, Mr. O'Brien, I'm not going to allow you to go any further.

"Mr. O'Brien: Well, malaria came from the South Pacific.

"Mr. Nesbitt: I can't see the materiality of any of this.

"The Court: No, and you jurors are absolutely not performing your duty if you are going to allow anything of that character to influence you in any way in the affairs of this case. It has nothing to do with it. Now, proceed, Mr. O'Brien.

"Mr. O'Brien: May I suggest, Your Honor, that in the matter of handling a gun, his military service and experience is important here?

"The Court: I don't think it's got one thing to do with it.

"*Q.* During the time that you were in service, were you in combat service? *A.* Yes, I was.

"The Court: Now, wait a minute, Mr. O'Brien; we're either going to try this case or we're going to quit. Now, one way or the other.

"Mr. O'Brien: My point is, Your Honor—now, I want to be fair,—

"The Court: You don't want to be fair with me.

"Mr. O'Brien: I want to be absolutely fair."

Defendants contend that the court's remarks were prejudicial. On the issues in this case none of the testimony offered was material. The court might have been somewhat more guarded in its remarks, but defendants' counsel invited it. He persisted in his effort to bring into the case matters which had no place in the record. What was said by the court in

*Hein v. Mildebrandt,* 134 Wis. 582, 589, 115 N. W. 121, is applicable here:

". . . it [is] clear that there was no prejudicial error in the language used under the circumstances, but on the contrary that the purpose of the court was to confine counsel within proper limits and to prevent him from persistently endeavoring to draw out evidence from the witness after rulings of the court that the same was improper."

There was no reversible error committed.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). Negligence, in its civil relations, means want of ordinary care. Intent is not an element of legal negligence. See Wharton, Negligence (2d ed.), p. 9, sec. 11; Shearman & Redfield, Negligence (3d ed.), p. 4, sec. 2. Contributory negligence may be a defense, but it does not have a place in an intended assault and battery case. The effect of the decision of the majority will be to bring confusion into our law of negligence. The act styled as negligent was an intentional act, not a thoughtless or negligent act, and may be described in the language used in 4 Am. Jur., Assault and Battery, p. 143, sec. 28, as "discharging a firearm to frighten person." This section reads:

"In some cases the rule is laid down without qualification that anyone who discharges a firearm to frighten another is guilty of assault. In others it is said that if a person unlawfully discharges a firearm to frighten another but without intending to hit him, he commits assault and battery if the person is hit."

Whether liability exists should be determined, it seems to me, in an action for assault and battery, where the surrounding circumstances showing the invasion of the defendants' premises and the disorder caused by the acts of the plaintiff might be properly weighed against the actions of the defendants and where self-defense and sufficient provocation would be properly considered. *Zimmerman v. Northern Pacific R. Co.* 157 Wis. 514, 147 N. W. 1039. The actual case arising

out of the circumstances described in the statement of facts has not been fully and properly tried. There is no denial of the provocation caused by plaintiff's conduct. If by any remote theory the defendants' acts should be held negligent, so must have been the acts of plaintiff, and why, under such a theory should not a comparison of negligence have been required?

There should be a reversal and a new trial, first, because an intentional act under circumstances such as exist here is not to be classified as an act resulting from failure to exercise ordinary care; and, second, because the defendants were entitled to have the jury consider the act as intentional and to have them decide whether it was justified by the situation created by the plaintiff.